Opinion delivered by
Harding, P. J.
The following rule was taken in the case of Herbert Blewitt: Now, November 11th, 1874, the said Herbert *75 Blewitt, having been committed to the State Lunatic Hospital, under proceedings had in Common Pleas to No. 468, August T., 1870, upon motion of George R. Bedford, Esq., attorney for the county of Luzerne, the court grant rule on the Directors of the Poor of Providence, to show cause why the city of Scranton, within the Providence Poor District, shall not be certified as the place of legal settlement of said lunatic, at the time of application made, as well as at the time he was committed to the Pennsylvania State Lunatic Hospital. On the same day a similar rule was granted in the case of Charles Flynn, and one also in the case of Mabel McFadden. Service of the rules was accepted on behalf of the Directors of the Poor of Providence ; aud, for the purpose of reaching an early disposition of the real matter involved, a statement of facts under an agreement of a somewhat earlier date, was submitted for our consideration. Thus : Now, May 6th, 1874, it is agreed, that at the time the above-named parties were respectively committed to the State Lunatic Hospital, the said Herbert Blewitt was legally settled in the Seventh ward of the city of Scranton, the said Charles Flynn was legally settled in the Third ward of the city of Scranton, and that the said Mabel McFadden was legally settled in the Fourth ward of the city of Scranton, and that said city of Scranton is within and a part of the Poor District of Providence. It is further agreed, that the said county of Luzerne has become liable for, and has paid out for the care of said lunatics in the Pennsylvania State Lunatic Hospital, the sum of sixteen hundred and nineteen dollars and sixty cents, up to the 18th day of March, 1874; that said sum is greater, however, than would have been the cost or expense of keeping said lunatics in the poor-house of said district; that the poor district was not served with notice in these cases, until the service of the present rules to show cause, &c.
The purpose of this proceeding on the part of the county of Luzerne, is to obtain reimbursement from the Poor District of Providence for the outlay incurred in keeping these three lunatics at the Pennsylvania State Lunatic Hospital. But the directors of the poor of that district deny that liability at all attaches to it. The reason assigned in their behalf seems to be, that the lunatics could have been kept at less cost in the poor-house of the district than at the asylum. In other words, the notion *seems to be entertained that cheapness of keeping the insane poor, not pro *76 vision for their proper care and treatment, is a chief attainment, if not the sum of official duty appertaining to overseers of the poor of townships and directors of the poor of districts. This narrow and illiberal, not to say barbarous and inhuman, view is fortunately not in pace with the legislation of the age. The twelfth section of the Act of April 14th, 1845, contemplates that the authorities having chai’ge of the poor in the respective counties, districts, and townships of the Commonwealth, will send certain insane paupers to the lunatic hospitals, and they have power to do so. But this is not all. Authority has been lodged with other tribunals to determine and direct not only where insane persons, but inscme paupers, shall be kept; and, with respect to the latter, it is to be exercised without any reference to the views or wishes of the overseers of the poor of townships or the directors of the poor of districts. The Act of May 7th, 1874, P. L. 119, the Act of May 14th, 1874, P. L. 160, the Act of April 20th, 1869, P. L. 78, the Act of April 8th, 1861, P. L. 243, the Act of March 31st, 1860, P. L. 385, the Act of April 14th, 1845, P. L. 441, all contain provisions of this character.
When, however, an indigent insane person is placed by direction of the court in one of the lunatic hospitals of the State, the county is primarily liable to the trustees for his or her care and maintenance, with remedy over against the township or poor district “ where by existing laws the township is liable for the support of such pauper,” the township or poor district to be reimbursed out of the estate of the lunatic, if he or she has any, or by the relatives, if they are of sufficient ability. Directors of the Poor, &c., v. Montour County, 51 Legal Intelligencer, 276 ; Lower Augusta Township v. Northumberland Co., 1 Wr. 143 ; Township of Franklin v. Penna. State Lunatic Hospital, 6 C. 522.
The “ existing laws” under which a township or poor district, as the case may be, is made liable for the maintenance of paupers in a State Lunatic Hospital, are to be found in but a single section of the Act of April 14, 1845, Purd. 971, pl. 19, namely, section 11. This section provides that it shall be the duty of the court, in all cases where they shall commit any person to the asylum, to certify to the trustees the legal settlement of such person, if he or she have any legal settlement in this Commonwealth; and if such person shall have no such settlement, then to certify the place of residence *77 of such person; and the poor district so certified to be the place of settlement or residence of such poor person shall be chargeable with the expense of his or her care and maintenance and removal to and from said asylum. This certification, however, is not to be made until after due notice has been given to the constituted authorities having control of the poor in the township or ^district to be charged. And this notice is material; for, under the first section of the Act of February 17th, 1854, P. L. 85, Purd. 972, pl. 20, which was a supplement to the Act of April 14th, 1845, and which very properly recognized a distinction between a “ legal settlement” and a “ residence” as applied to paupers, a township or district thus notified might come into court and show that some other district was the true place of settlement of the lunatic, and thus legitimately escape liability. Shenango Township v. Wayne Township, 10 C. 184; or that the lunatic was not settled in such district, but only resided therein at the time of transfer to the asylum ; in which case the liability for care and maintenance would fall upon the county.
When, however, a county pays for the care and maintenance of an insane pauper at a State Lunatic Hospital, under liability attaching through the fourth section of the Act of April 8th, 1861, assumpsit may be maintained against the proper poor district; but not until the place of settlement of the pauper has been fixed by adjudication of the Court of Quarter Sessions, under the Act of 1845, after notice.
In the cases before us, a further ground of immunity from liability is set up by the Directors of the Poor of Providence. They claim that their district was not served with the notice contemplated by the statute at the time these three lunatics were committed to the hospital. One of them, Herbert Blewitt, was committed on the 25th of May, 1870; Charles Flynn, another, was committed on the 22d of August, 1870; and the third, Mabel McFadden, was committed on the 3d of November, 1870. It is conceded that the first notice given to the district was that of November 28th, 1874. But this, as it seems to me, should be a reason rather for joy than complaint on the part of the directors. There is no county in the State, probably, except Luzerne, whose officers would promptly pay the regular quarterly bills for the care and maintenance of three lunatics in the hospital for upw'ards of four *78 years before taking steps looking to reimbursement by the district chargeable under the law with such bills. Besides there is nothing in the suggestion that notice should be given to a district at the time one of its insane poor is committed to a lunatic hospital. The law does not contemplate that a pauper, even, upon whom the greatest of misfortunes has fallen, shall be denied the care and comfort, and, possibly, the cure attainable only at one of these institutions, until the question of his or her “legal settlement” or “ residence” shall have been passed upon. Any subsequent adjudication, certainly within six years, upon this point, after proper notice, is sufficient to fix the liability where it belongs.
*To conclude, we hereby certify substantially in the language of the parties to the agreement accompanying this proceeding, that Herbert Blewitt was legally settled in the Seventh ward of the city of Scranton; that Charles Flynn was legally settled in the Third ward of said city; and that said Mabel McFadden was legally settled in the Fourth ward of said city, at the time they were severally committed to the State Lunatic Hospital; and that the said city of Scranton is within and a part of the Poor District of Providence.